

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

UNITED STATES OF AMERICA

V.                                                    Case No. 4:24-CR-001

JOHN ANTHONY CASTRO

---

## MOTION TO MODIFY SENTENCING

---

Pursuant to Fed. R. Crim. P. 35(a), due to clear error and arithmetic error, Defendant John Anthony Castro, pro se, files this motion to modify sentencing and, in support therefore, shows the following:

I. UNWARRANTED DISPARITY IN SENTENCING

Pursuant to 18 U.S.C. 3553(a)(6), Congress mandated that a district "court, in determining the particular sentence to be imposed, shall consider... the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." The Fifth Circuit has interpreted this to mean that "a defendant may be able to establish substantive unreasonableness based on the existence of an unwarranted disparity in sentences if he [the defendant] can show that a similarly situated defendant received a lesser sentence." U.S. v. Wilson, No. 23-60101 (5th Cir. 2024) (citing U.S. v. Armstrong, 550 F.3d 382, 406 (5th Cir. 2008)). This should be contrasted with "general sentencing disparities" based on national statistics, which is "not a factor [the Fifth Circuit] grant[s] significant weight." U.S. v. Naidoo, 995 F.3d 367 (5th Cir. 2021).

In this case, Defendant submitted the Declaration of Alan Ellis that contained evidence of one identically situated defendant and several similarly situated defendants. The identically situated defendant had a similar zero-point criminal history, was found guilty at trial, the guilty was for the same offense, and the offense level was the same. Factually, however, this other defendant was found guilty by a jury. In this case, Defendant elected a more efficient and less costly bench trial, which warrants at least a similar and possibly even a lower sentence than the other defendant. Moreover, the other defendant's tax loss was nearly 7 times the amount of Defendant's. In this case, Defendant's tax loss was a small fraction of the other defendant, which again warrants a similar or lesser sentence than the other defendant.

Because Defendant has clearly outlined why the disparity in sentencing in this case is unwarranted, Defendant moves this Court to modify the sentencing in accordance with 18 U.S.C. 3553(a)(6) to avoid the unwarranted disparity.

If, however, the Court feels that the disparity was warranted, Defendant moves this Court for a more definitive statement as to the reasons warranting the disparity. Congressional intent in enacting 18 U.S.C. 3553(a)(6) is clear: the Sentencing Reform Act of 1984 aimed to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar circumstances received similar sentences. A within-Guideline range sentence does not automatically escape review under 18 U.S.C. 3553(a)(6) because, if all other defendants nationwide are receiving downward departures but Defendant in this case did not receive a similar downward departure, the purpose and intent of 18 U.S.C. 3553(a)(6) is still frustrated with unjustified and unwarranted disparity without explanation.

"Congress concluded the 'sentencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public.'" U.S. v. Hadaway, 998 F.2d 917 (5th Cir. 1993) (quoting S.Rep. No. 225 at 45).

Without judicial clarity for the disparity, appellate review is effectively defeated. Laws are not to be read in a manner that defeats reviewability or result in absurdity, such as unenforceability.

## II. ARITHMETICALLY ERRONEOUS TAX LOSS CALCULATION

In U.S. v. Johnson, the Fifth Circuit upheld a clear and reliable formula for calculating the tax loss, which Defendant will go through step-by-step to highlight the arithmetically erroneous nature of the government's calculation in this case. See 841 F.3d 299 (5th Cir. 2016).

First, the government must calculate the total amount of tax reduction generated beyond the standard deduction on Schedules A and business losses on Schedules C claimed on all tax returns. In Johnson, this figure was $37.5 million. In this case, it was $15 million according to the government.

Second, the government must discount that figure by the national or geographic average amount of itemized deductions and business loss that are typically upheld (i.e., the portion likely to have been legitimate based on national or geographic averages). In Johnson, the local average for legitimate itemized deductions and business losses warranted a 7.1% discount, so the $37.5 million was reduced by 7.1% down to $34.9 million, which represented the maximum possible tax loss. In this case, the government made no such adjustments and simply went with 100% of the $15 million. This was an arithmetic error by the government in the tax loss calculation methodology. In effect, the government argues that all deductions, including deductions reported on IRS Form 1098 Mortgage Interest Statements by third-party institutions, were "fabricated." This is also clear error.

Third, the government, utilizing the total number of case-specific Revenue Agent Reports wherein the taxpayers were personally interviewed, must identify which taxpayers made claims of fabricated deductions. In Johnson, the percentage of investigative reports wherein taxpayers made accusations of fabrications was determined to be 72.2%. Thus, the falsity rate of 72.2% was then applied to the maximum possible tax loss of $34.9 million to arrive at a "reasonable estimate" of a tax loss of $25.2 million. In this case, no such falsity rate was even calculated

utilizing investigative reports wherein the taxpayer was personally interviewed. Instead, the calculation relied upon civil IRS examinations that dealt with client misinterpretations of a legal position wherein not a single taxpayer made a claim of fabricated deductions. To be clear, in not one of the 100+ civil examinations did a single taxpayer make a claim of fabricated deductions. Therefore, if the civil IRS examinations were the source of the government's falsity rate calculation of 100%, then it was clear error since not a single taxpayer in those examinations ever claimed there were fabricated deductions on their returns. The government erroneously determined a 100% falsity rate and stayed with the full $15 million calculation.

Lastly, at sentencing, the government addressed other tax losses that were attributable to Defendant's legal positions that were not upheld on either administrative or judicial review. The government appears to have forgotten that the Court's verdict did not address the legal positions and instead found that, in certain instances, there were fabricated deductions. More importantly, the government seems to have forgotten that it did not introduce expert testimony to rebut the legitimacy of Defendant's legal positions, so they are presumed valid both now and on appeal. This further illustrates that the government committed clear error in calculating the tax loss and falsity rate by inappropriately taking into account losses from audits not within the scope of the Court's verdict.

## III. REQUEST FOR EVIDENTIARY HEARING

Based on the foregoing, Defendant requests an evidentiary hearing on the tax loss calculation to correct these clear errors and arithmetic errors to properly calculate the tax loss since this substantively affects his sentencing. The government's Special Agent Reports do not support a falsity rate beyond 15% and the proper use of arithmetic will show that.

Respectfully submitted,

John Anthony Castro
Defendant, Pro Se